UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| NJ BUILDING LABORERS STATEWIDE BENEFIT FUNDS AND TRUSTEES THEREOF, | Civil Action No.: 10-4212 (FLW) |
| Petitioners, | OPINION |
| v. |  |
| CHANREE CONSTRUCTION CO., INC., |  |
| Respondent. |  |

**WOLFSON, United States District Judge:**

The instant matter is a continuation of an initial arbitration award, obtained by Petitioners New Jersey Building Laborers' Statewide Benefits Funds (the "Funds") and Trustees Thereof (the "Trustees") (collectively, "Petitioners), requiring general contractor Chanree Construction Company ("Chanree" or "Respondent") to assume certain liability, pending an audit, for delinquent contributions owed to the Funds by a subcontractor employed by Chanree. This Court affirmed that initial award and ordered Petitioners to audit Chanree's records to determine the amount of the liability, if any. After an audit and another arbitration proceeding, wherein the Arbitrator determined Chanree's liability in the amount of $196,229.76, Petitioners seek to confirm that decision in the present petition. Chanree opposes the motion and cross-moves to vacate the award. In addition, Sloan & Co., Inc. ("Sloan"), a subcontractor hired by Chanree to perform work for the same project at issue, moves to intervene in the instant matter in order to quash a writ of execution served upon the Chesterfield Board of Education by the Funds. For the reasons that follow, Petitioners' motion to confirm is **GRANTED**; Petitioners'

motion for turnover of funds is **DENIED**, Chanree's cross motion is **GRANTED in part and DENIED in part**; and Sloan's motion to intervene is **DENIED** as **MOOT**.

I. FACTUAL AND PROCEDURAL BACKGROUND

The Court has previously rendered a written Opinion, see Opinion dated March 28, 2012, and a Letter Order, see Letter Order dated September 19, 2011, related to this matter. Because my prior rulings extensively outlined the underlying facts, to ensure judicial economy, I will incorporate them herein. As a brief summary, on May 30, 2010, the Arbitrator, J.J. Pierson, having interpreted the Collective Bargaining Agreement ("CBA") in place between the Funds and Chanree, found that Chanree, a general contractor for Palmer Construction, Inc. ("Palmer"), was required to withhold money from Palmer, and remit that sum to the Funds, in the event that Palmer failed to pay fringe benefits set forth in the CBA, to which Palmer was also a signatory. In that connection, the Arbitrator found that 1) Palmer was delinquent in payment of fringe benefits to the Funds in the amount of $220,887.58; 2) that the Funds were to audit Chanree to determine whether Chanree owed any payment to Palmer when the Funds provided notice of Palmer's delinquency; and 3) Chanree's liability to the Funds is limited to any amount which Chanree owes Palmer, up to $220,887.58.

After receiving that award, the Funds petitioned this Court to confirm the Arbitrator's decision, and on March 28, 2012, the Court, despite Chanree's strenuous opposition, confirmed the award. Chanree's opposition was mainly based on its position that the Arbitrator lacked jurisdiction under the Project Labor Agreement ("PLA").[1] To be clear, having analyzed the

---

[1] As I have explained in previous rulings, the Funds and Chanree are signatories to the PLA for work performed on the New Jersey Chesterfield Elementary School project ("Chesterfield Project"). In its capacity as a general contractor, Chanree subcontracted work on the Chesterfield Project to Palmer. Significantly, the PLA attached and incorporated the terms of the CBA, and includes the following provision: "[w]here a subject covered by the provisions, explicit or implicit, of [this PLA] is also covered by [the Laborers' CBA], the provisions of this

relevant provisions of the PLA and the CBA, I specifically found that the Arbitrator had jurisdiction to hear the disputes related to Palmer's delinquency and Chanree's obligation to make payments to the Funds on behalf of Palmer. Andy, while I agreed with the Arbitrator that Chanree is obligated to pay the Funds in the amount that Chanree owes Palmer under the Chesterfield Project, up to $220,887.58, I also ordered the parties to conduct an audit to determine the precise amount, if any, due Palmer from Chanree for work performed on the Chesterfield Project. See Letter Order, p. 2.

Subsequent to confirmation, Petitioners, without having conducted an audit, sought the issuance of a writ of execution for monies due to Chanree from Chesterfield Township Board of Education in connection with the construction of the elementary school. The Funds also moved before this Court to order the Board to turnover funds levied upon from Chanree. However, pursuant to my Letter Order, I restrained the Funds from any further collection at that time because an audit had not been performed. As I explicated clearly in that Order, any collection efforts on the part of the Funds must be preceded by an accurate accounting of the amount owed by Chanree to Palmer. See Id. at p. 3.

Thereafter, the Funds conducted an audit, which was performed by its auditor, Shultheis & Panettieri, LLP ("S&P"). S&P was directed to determine the amount of monies held by Chanree, for payment to Palmer, on the Chesterfield School Project on the date Chanree received the Fund's notice of Palmer's delinquency, i.e., May 2010. Following analysis of records

---

[PLA] shall prevail." See PLA at Art 2.4. The PLA includes a three-step arbitration procedure before the American Arbitration Association to settle non-strike disputes between signatory unions, employers, and employees. See Id. at Art. 9.

submitted by the Funds and Chanree, S&P issued its determination which found that Chanree in fact owes Palmer for ceratin amounts in connection with Palmer's work as a subcontractor.[2]

Subsequently, Chanree, dissatisfied with those findings, requested this Court's intervention. Chanree challenged – and indeed, challenges in this matter – the auditor's methodologies, and the Arbitrator's authority, with respect to the factual determination of the amount of the contractual payment Chanree owed to Palmer in May 2010. In Chanree's view, the auditor cannot make a proper determination of that amount without taking into account all of the subcontract agreements unrelated to the Chesterfield Project and the interactions between Chanree and Palmer. Chanree insisted, and insists here, that it could "offset against monies due on one subcontract debts and obligations resulting from breaches or default on others" or that Chanree had "the right to backcharge Palmer for any exposure or potential exposure it had as a result of Palmer's contract breaches, including for any attorney's fees it incurred to deal with Palmer issues." See Chanree's Brief, p. 10. Based on Chanree's own calculations, which took into account additional unrelated subcontract agreements, Chanree maintains that it does not owe Palmer any payment for the Chesterfield Project.

On February 24, 2012, having received Chanree's position and the Fund's opposition,, I found that the "determination of those issues [as argued by Chanree], pursuant to the parties' Collective Bargaining Agreement, should be left to the sound judgment of an arbitrator." See Court's Order dated February 24, 2012. Accordingly, I denied Chanree's request and ordered the parties to pursue arbitration.

---

[2] The audit was presented to the Arbitrator, who credited certain payments made by Chanree and adjusted the numbers found by the auditor. I will discuss more fully this arbitration proceeding below.

**4**

On May 11, 2012, the Funds proceeded with arbitration, which was conducted by J.J. Pearson. At the hearing, Chanree was given the opportunity to present proofs, both documentary and through testimony. After consideration of the hearing record and post-arbitration written summations, the arbitrator made the following, inter alia, factual and legal determinations:

1. The May 11, 2012 hearing and resulting award was a continuation of the proceedings which produced the initial arbitration award in May 2010.

2. An earlier March 13, 2012 hearing had been convened to review an earlier draft of the audit report. The hearing was adjourned when it became apparent that "Chanree had received an earlier working version of the audit report and not the final version which the auditor had revised upon information provided by Chanree through meetings with the audit firm."

3. The Fund's auditor testified that the audit was based on the records provided by Chanree, including check stubs, contracts and invoices. The audit found that Chanree owed Palmer in the amount of $723,270.79 at the contract's termination.

4. The Arbitrator reduced the amount of $723,270.79 by $20,000, which represents attorney's fees expended prior to May 25, 2010 due to the Fund's claims against Palmer on the Chesterfield Project.

5. While the $703,270.79 amount was sufficient under the CBA to make Chanree liable for Palmer's entire $220,887.58 delinquency, the Arbitrator reduced further that amount by $24,657.82, which represents a February payment made by Chanree to the Funds on Palmer's behalf, which had not been fully credited. The Arbitrator found that the Funds are due $196,229.76 from Chanree for obligations on behalf of Palmer on the Chesterfield Project.

6. In addressing Chanree's challenge to the Arbitrator's authority (as mentioned above), the Arbitrator found that his review of Chanree's obligation to Palmer should solely be based on the parties' contract on "the Chesterfield project and is confined to a determination of the monies due Palmer arising under the [May 30, 2010] arbitration award." See Decision dated October 25, 2012, p. 11. Indeed, the Arbitrator stated that there is "no relevant argument to support or sustain Chanree's position that other subcontracts [unrelated to the Chesterfield Project] should affect the monies due Palmer by Chanree on the Chesterfield job." Id. In that regard, the Arbitrator explicitly found that those "subcontracts . . . between Chanree and Palmer, are outside the parameters of [his] authority to consider. While perhaps relevant to demonstrate the breadth of the relationship between Chanree and Palmer, the documents are not relevant to the decision relating to monies due Palmer by Chanree on the Chesterfield project." Id.

In the instant petition, the Funds seeks to confirm the October 25, 2012 arbitration award (the "October Award") and moves this Court to order the Chesterfield School Board to turn over monies – owes to Chanree for the Chesterfield Project – that the Board had been holding pending this Court's decision. In response, Chanree challenges the Arbitrator's decision and moves to vacate the October Award based on the following contentions: 1) the Arbitrator had no jurisdiction to decide how much, if any, was "due" Palmer from Chanree as of May 2010; 2) the Funds are barred from confirming the second arbitration award, having failed in the first arbitration to prove if sums were "due" Palmer; 3) the Arbitrator failed to consider material and relevant evidence; and 4) certain ex parte communications between the Arbitrator and the Funds' counsel tainted his impartiality. Based on the reasons below, I reject Chanree's arguments.

## II. DISCUSSION

### A. Standard of Review

In my previous Opinion, I made my role clear in the context of confirming an arbitration award: when parties to a CBA agree to settle a dispute through arbitration, a district court's review of the resulting decision of the arbitrator is "extraordinarily limited." See Dauphin Precision Tool v. United Steelworkers of Am., 338 Fed. Appx. 219, 222 (3d Cir. 2009) (citing Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001)). Indeed, the court does not generally "review the merits of the decision or correct factual or legal errors." Id. (citing Garvey, 532 U.S. at 509; Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 279 (3d Cir. 2004)). Rather, this Court "must enforce an arbitration award if it is based on an arguable interpretation of the collective bargaining agreement, and [] may only vacate an award if it is entirely unsupported by the record or if it reflects a 'manifest disregard' of the agreement." Id. at 222-23 (quoting Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1291 (3d Cir. 1996) (quoting News Am. Publ'ns, Inc. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990)). In other words, unless the "arbitrator's decision is wholly unsupported by the agreement's plain language or the arbitrator fails to adhere to basic principles of contract construction[,]" a court is not permitted to overturn that decision. Cacace Associates, Inc. v. Southern New Jersey Bldg. Laborers Dist. Council, No. 3:07-cv-5955-FLW, 2009 WL 424393, *3 (D.N.J. Feb. 19, 2009) (citing News Am. Publ'ns, Inc., Daily Racing Form Div. v. Newark Typographical Union, Local 103, 921 F.2d 40, 41 (3d Cir. 1990); Exxon Shipping Co. v. Exxon Seamen's Union, 801 F.Supp. 1379, 1384 (3d Cir. 1992)). Accordingly, this Court's obligation is to "uphold an arbitrator's judgment if the

decision, on its face, was drawn from the parties' agreement or is remotely based on reasonable contractual interpretation." Id. (citing United Trans. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995)).

However, when examining the arbitrability of an issue, a court should not give deference to the arbitrator's decision, and instead should "'independently review the agreement'" and "'exercise plenary review to determine whether the matter is arbitrable.'" See Int'l Union of Bricklayers & Allied Craftworkers, Local 5 v. Banta Tile & Marble Co., Inc., 344 Fed. Appx. 770, 772 (3d Cir. 2009) (quoting McKinstry Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 16, 859 F.2d 1382, 1385 (9th Cir. 1988) (citation omitted)); see also U.S. Small Business Admin. v. Chimicles, 447 F.3d 207, 209 (3d Cir. 2006) (stating that whether a party has agreed to arbitrate is a legal question which requires plenary review). "[A] question of arbitrability is raised only where disputes concern 'whether the parties are bound by a given arbitration clause' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" N.J. Bldg. Laborers, 341 Fed. Appx. at 820 (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-84 (2002)).

It is with the above framework in mind, I must analyze the parties' dispute.

**B.     Whether Petitioners are Barred from Confirming the October Award**

First, I will summarily address Chanree's argument that the Funds could not, as a matter law, pursue the second arbitration proceeding in 2012, because the Funds did not, in its first arbitration proceeding in May 2010, prove its case against Chanree. Failing to recognize that the two arbitration proceedings are inextricably related, Chanree relies on the entire controversy doctrine. Indeed, the entire controversy doctrine essentially serves as a procedural bar in New Jersey where a party had an opportunity in a prior proceeding to fully present a dispute and

failed to do so, even in ceratin arbitration proceedings. See N.J. Ct. R. 4:30A; Shoremount v. APS Corp., 368 N.J. Super. 252, 255 (App. Div. 2004).

However, Chanree mischaracterizes the proceeding here. As this Court's first Confirmation Order stated clearly, pursuant to the instructions of the Arbitrator – and this Court's subsequent imprimatur – the parties were directed to engage in an audit. In the Court's February Order, I further directed the parties to return to the Arbitrator to conduct the necessary proceedings, as set forth by the CBA, in order for the Arbitrator to make its final determination as to the amount of payment that Chanree must remit to the Funds on behalf of Palmer. Simply put, the May 2012 arbitration is merely a continuation of the May 2010 proceeding, such that there is no legal preclusive effect of the earlier proceeding against the subsequent one. Indeed, where supplementary proceedings and fact finding are necessary to clarify or otherwise supplement a prior award, the entire controversy doctrine cannot apply to bar subsequent arbitration proceedings. See, e.g., Whitlock Packaging Corp. v. Precision Diversified Sys., Inc., 59 F. Supp. 2d 384, 390 (D.N.J. 1998). None of the cases cited by Chanree dealt with this apparent distinction; rather, those courts were confronted with circumstances where the subsequent arbitration proceedings were initiated despite the existence of a final judgment from the arbitrator. See, e.g., Shoremount, 368 N.J. Super at 252; Cafferata v. Peyser, 251 N.J. Super. 256, 261 (App. Div. 1991) and Spolitback v. Cyr Corp., 295 N.J. Super. 264, 270 (App. Div. 1996). Here, because there has been no final judgement insofar as it relates to the amount of monies Chanree must make on behalf of Palmer, the May 2012 arbitration was merely a continuation of the first, and thus, I reject Chanree's position on this issue.[3]

---

[3] Chanree further maintains that the Funds should be judicially estopped from arguing that the May 2012 arbitration proceeding is a continuation of the May 2010 proceeding, because the Funds treated the first arbitration award as final to the extent that the Funds proceeded with its Writs of Execution against the Chesterfield School Board. I do not find this argument

## C. Whether the Arbitrator had Jurisdiction to Decide How Much was Due Palmer from Chanree as of May 2010

To reiterate, Chanree had previously challenged the Arbitrator's general authority under the relevant CBA and PLA, to decide whether Chanree must remit a certain amount of money on behalf of Palmer due to Palmer's delinquency. As to that issue, I found that by the operation of the relevant terms of these contracts, the Arbitrator had the requisite authority and jurisdiction to hear the parties' dispute in the instant matter. In this proceeding, Chanree shifts its challenge, and in so doing, it questions the Arbitrator's jurisdiction to determine the amount of monies Chanree owes Palmer for work performed on the Chesterfield Project. On this question, Chanree posits that the Arbitrator is not imbued with such authority, because this analysis must necessarily involve examining other subcontracts between Chanree and Palmer, not related to the project at issue, and at the same time, analyzing subcontractor default issues in order to determine whether money was due.[4]

Admittedly, regarding his authority in this respect, the Arbitrator clearly stated that he had no authority under the relevant CBA and PLA to examine any other contracts governing the contractor-subcontractor relationship between Chanree and Palmer. Rather, the Arbitrator focused only on the Chesterfield Project and the parties' obligations thereunder, and indeed, this is the precise authority which the Court previously found appropriate. The Arbitrator further noted that the arbitration proceeding relates solely to the Chesterfield Project and "is confined to

---

convincing. This issue was brought to my attention in September 2011 by the parties, and at that time, I restrained the Funds from any collection efforts. In so doing, I clarified my March 2010 Order and directed that the parties must first proceed with an audit. As such, after the Court's clarification, Petitioners could not have proceeded under the impression that the first arbitration award was a final judgment.

[4] This is not the first time I was asked to decide this question. Despite Chanree's position on this issue, by Order dated February 24, 2012, I directed the parties to pursue arbitration. At this time, I will take the opportunity to expand upon my previous decision in this context.

a determination of monies due Palmer arising under the arbitration award issued in May 2010 under the existing and effective PLA. While permitting Chanree the opportunity to introduce evidence during the hearing in support of its contention, there is no basis for this Arbitrator to consider the subcontracts on other projects and no relevant argument to support or sustain Chanree's position that other subcontracts should affect the monies due Palmer by Chanree on the Chesterfield job." See Decision dated October 25, 2012, p. 11. The Arbitrator went on to explain that "the PLA relates only to the Chesterfield job and the action taken by the Funds, through the PLA and the [CBA], arose only from the Chesterfield Project. Those documents defined the authority of this Arbitrator. Conversely, the subcontracts referred to between Chanree and Palmer are outside the parameters of this Arbitrator's authority to consider." Id.

Having reviewed the Arbitrator's decision in this regard, the Arbitrator was certainly within his authority to render a decision based solely on the record regarding the Chesterfield Project. In fact, this Court, on multiple occasions, directed the parties to pursue an audit and proceed to arbitration in order for the Arbitrator to decide, in the first instance, the amount Chanree owes to the Fund on behalf of Palmer. While Chanree takes the position that the Arbitrator could only accurately assess that amount by taking into account the broader existing financial relationship between Chanree and Palmer, under the contractual relationships governed by the relevant PLA and the CBA, there is no duty for the Arbitrator to look beyond the record of the Chesterfield Project.

As I have explained extensively in my previous rulings, there is no doubt that the PLA established certain mechanism for the resolution of wage and benefit controversies. The PLA also provided that benefits contributions on behalf of workers who are members of the employee benefit funds would be paid according to the terms of the CBA. Further, the PLA established

that contractors would be bound by the terms of any established Trust Agreements. By the operation and interplay of the express terms of those agreements, Chanree agreed to contribute on behalf of Palmer – in the context of the Chesterfield Project – in the event Palmer fails to pay fringe benefits to the Funds. <u>See</u> Opinion dated March 28, 2011, pp. 2-3, 5-6. Chanree did not point to a provision, in any of the relevant agreements, that the Arbitrator could look beyond the Chesterfield Project when determining the amount Chanree must pay on behalf of Palmer, particularly since Palmer's failure to pay fringe benefits relates only to the construction project in Chesterfield. Moreover, Chanree does not cite to any authority to support its position that the Arbitrator should have looked to other subcontracts between Chanree and Palmer in making his determinations, other than cases discussing the general proposition that an arbitrator cannot go beyond the scope of his authority. Absent any contractual language and case law to the contrary, it was appropriate for the Arbitrator to have considered only the record involving the Chesterfield Project to arrive at his decision. <u>See, e.g.</u>, <u>New Jersey Building Laborers Statewide Benefit Funds v. Mark Construction</u>, No. 07-5934, 2008 U.S. Dist. LEXIS 62174 (D.N.J. Aug. 12, 2008).

    I note that while Chanree and Palmer may have an extensive business/financial relationship, which arises from various contracts unrelated to the Chesterfield Project, the Arbitrator could have only looked to the rights and obligations of the parties that flowed from the agreements related to the Chesterfield Project, particularly since Chanree agreed to such an obligation when it became a signatory to the CBA. Therefore, even if Chanree could not owe Palmer any money if all the projects between these parties are taken into consideration at the time Palmer's delinquence notice was sent to Chanree, Chanree is nonetheless obligated to contribute to the Funds on behalf of Palmer because of Palmer's delinquent benefit payments to

the Funds as of May 2010. In that regard, Chanree may choose to pursue Palmer in other ways, including litigation, to recover those contributions. As the Arbitrator has found – and this Court agrees – it is not within the purview of the arbitration proceeding to determine the financial obligations between Chanree and Palmer involving other projects.

**D.      Whether the Arbitrator Failed to Consider Material and Relevant Evidence**

Having found that the Arbitrator had the authority and jurisdiction to decide the amount of payment Chanree must contribute to the Funds on behalf of Palmer, the Court's substantive review of the Arbitrator's decision is "extraordinarily limited."[5] On a substantive basis, Chanree's first argument is an extension of its earlier challenge: the Arbitrator failed to consider, and excluded, all evidence relating to other subcontracts between Chanree and Palmer. Without discussing those types of evidence Chanree presents here, I reject Chanree's contention for the same reasons I stated earlier in this Opinion. See supra, section II, C.

Next, Chanree argues that the Arbitrator erroneously considered evidence regarding the extent of Palmer's work on the Chesterfield Project. In fact, Chanree devotes a significant portion of its motion challenging factual and legal determinations made by the Arbitrator. In sum, Chanree submits that the it produced to the Arbitrator evidence that Chanree did not owe

---

[5]      Regarding this Court's role, Chanree submits that because the Arbitrator was appointed by Petitioners, this Court's review should focus on whether the arbitration process was "fair and equitable." Chanree's position is not accurate. As I have delineated above, it is well-settled that an arbitration award, in the context of collective bargaining, should be upheld so long as it is rationally derived from the underlying facts and the parties' agreement. See Eastern Associated Coal Corp. V. Mine Workers, 531 U.S. 57 (2000). Therefore, as long as "the arbitrator is even arguably construing or applying the contract and acting within the scope of this authority, that a court is convinced he has committed serious error does not suffice to overturn his decision." United Paperworkers International Union v. Misco, Inc., 484 U.S 29 (1987); see Dauphin Precision Tool v. USW, 338 Fed. Appx. 219, 223 (3d Cir. 2009) (holding that courts "must enforce an arbitration award if it is based on an arguable interpretation of the collective bargaining agreement, and [courts] may only vacate an award if it is entirely unsupported by the record or if it reflects a 'manifest disregard' of the agreement.").

any payment to Palmer on the Chesterfield Project due to 1) backcharges for faulty and incomplete work; 2) payments made to third parties due to Palmer defaults; and 3) attorneys' fees incurred to deal with Palmer issues.[6] In addition, Chanree maintains that the audit conducted by the Funds was woefully inadequate. Chanree takes issue with the auditor's simple mathematical approach in ascertaining the amount of money Chanree owes Palmer for the work performed on the Chesterfield Project. However, these arguments were presented to, and considered by, the Arbitrator. In fact, extensive testimony by both the auditor and the president of Chanree, Mr. Nucci, were heard by the Arbitrator, along with documentary evidence presented by both parties. With that record, the Arbitrator found that the audit was "based on records provided by Chanree, including check stubs, contract and invoices . . . ." Decision dated October 25, 2011, p. 8. The Arbitrator then went on to discuss the contents of the audit and addressed certain payments and credits that should have been provided to Chanree. See Id. Moreover, the Arbitrator also commented upon Mr. Nucci's testimony. In doing so, the Arbitrator explicitly discounted Mr. Nucci's testimony by opining that Mr. Nucci "did not convince [him] to modify or adjust the audit result," because "numerous items raised by Mr. Nucci in testimony were preciously discussed and considered in the analysis leading to the issuance of the final audit findings." Id. at p. 9. The Arbitrator made clear that his decision was substantially based on the audit findings submitted by the Funds.

In light of the Arbitrator's analysis, Chanree is hard pressed to argue that the Arbitrator did not consider evidence regarding Palmer's defaults and backcharges with respect to the Chesterfield Project. Indeed, the very arguments Chanree makes in its motion to this Court were presented to the Arbitrator for his consideration. To the extent that Chanree disagrees with

---

[6] I note that the Arbitrator applied a $20,000 credit to Chanree based on legal services rendered for matters relating to the Chesterfield job.

decision of the Arbitrator, it has not provided this Court with sufficient reasons to find that the Arbitrator's decision was entirely irrational and unsupported by the record before him. Essentially, Chanree's contentions here amount to a re-litigation of the issues already decided by the Arbitrator. I want to emphasize that this Court has no basis to overturn the Arbitrator's decision even if its factually or legally inaccurate. I am "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." United Paperworkers, 484 U.S. at 36. In other words, labor arbitration awards are presumed valid. Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 280 (3d Cir. 2004). And, the Arbitrator's decision is "subject to a standard of only minimal rationality." Citgo Asphalt Refining Company v. The Paper, Allied-industrial, Chemical, and Energy Workers International Union Local No. 2-991, 385 F. 3d 809, 817 (3d Cir. 2004)(quotations omitted). Hence, even the thinnest of basis is sufficient for this Court to confirm the Arbitrator's decision. See Dauphin Precision, 338 Fed. Appx. at 223 ("[o]ur review is limited to determining whether the arbitration award finds any support in the record, and, in this case, thin though the support may be, it does."); see also Exxon Shipping Co. v. Exxon Seaman's Union, 73 F.3d 1287, 1291 (3d Cir. 1996) (quoting News Am. Publ'ns, Inc. v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3rd Cir. 1990)). Because I find that the Arbitrator considered the pertinent evidence, and his decision was supported by the record before him, i.e., audit, I must reject Chanree's contention in this context.

### E. Whether the Arbitrator was Impartial

Finally, Chanree contends that the October Award should be vacated because the Arbitrator was biased against Chanree in making his decision. In that connection, Chanree points to an email, dated April 27, 2012, from the Arbitrator to the Funds' attorney, Bradley

Parson, wherein the Arbitrator denied Mr. Parson's request for an adjournment because Mr. Parson's partner, Mr. Kroll, could not make to the hearing. See E-mail dated April 27, 2012. In his short email, the Arbitrator stated that the hearing was being held to address "the respective 'amount'," and that Mr. Kroll's input has already been included. See Id. Whatever that phrase may mean, Chanree speculates that the Arbitrator exhibits a bias towards Chanree based on that statement. However, that evidence alone is insufficient to find a bias on the part of the Arbitrator. In order to show the "evident partiality" necessary to set aside an arbitrator's award, "'the challenging party must show a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitration.'" Kaplan v. First Options of Chicago, Inc., 19 F.3d 1503, 1523 n. 30 (3d Cir. 1994) (quoting Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1358 (6th Cir. 1989)). The Third Circuit has explained that "'evident partiality' is strong language and requires proof of circumstances "powerfully suggestive of bias.'" See Kaplan, 19 F. 3d at 1523 n.30 (citing Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 681-82 (7th Cir.), cert. denied, 464 U.S. 1009 (1983)). To meet that burden, Chanree must support its argument with particular examples of the alleged bias. Bender v. Smith, Barney, Harris, Upham & Co., 901 F. Supp. 863 (D.N.J. 1994), aff'd, 67 F.3d 291 (3d Cir. 1995).[7] Here, one ambiguous statement from the Arbitrator clearly does not suffice to meet this burden. Accordingly, I do not find that Chanree has proven that the Arbitrator was biased.

---

[7]   Chanree also suggests that the mere fact that the Arbitrator communicated with opposing counsel on an ex parte basis, this Court should vacate the award. I disagree. While ex parte communications in some instances may be sufficient to find bias on the part of an arbitrator, see Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F. 2d 649, 652-653 (5th Cir. 1979), the communication must be material. Id. In my view, an email denying an adjournment request made by opposing counsel, without more, does not amount to material communication.

### F. Whether the October Award should be Reduced

Chanree posits that in the event I conclude that the October Award be confirmed, I should reduce the award amount to correct a mathematical error. I disagree. As noted above, the Arbitrator found two credits to Chanree appropriate: 1) a credit in the amount of $24,657.52 relating to a payment which Chanree <u>submitted to the Funds</u> earlier in the project to satisfy a Palmer arrearage; and 2) a credit in the amount of $20,000 for attorney's fees expended prior to May 25, 2010 for legal services rendered for a matter relating to the Chesterfield Project. However, these two credits are different in nature. The amount of $20,000, in attorney's fees, only served to reduce Chanree's liability to Palmer as of May 2010, not Palmer's delinquency to the Funds. In other words, when the Arbitrator reduced Chanree's liability to Palmer from $723,270.79 to $703,270.79, that reduction did not affect the amount of the delinquency Palmer owes the Funds. In contrast, because Chanree made a payment of $24,657.52, directly to the Funds on behalf of Palmer, that effectively reduced Palmer's delinquency to $196,229.76.[8] As such, I do not find that the Arbitrator committed a mathematical error in this regard.

Having rejected Chanree's arguments against the confirmation of the October Award, I will, thus, confirm the Arbitrator's decision that Chanree must make a contribution in the amount of $196,229.76 on behalf of Palmer to the Funds.

### III. The May 13, 2011 Writ of Execution

Aside from the request to vacate the October Award, Chanree urges this Court to also vacate the writ of execution the Funds served upon the Chesterfield Board of Education on May 13, 2011. By way of summary, after this Court entered its earlier Order confirming the May

---

[8] Indeed, Chanree's liability to Palmer technically should have been further reduced from $703,270.79 to $678,613.27, because of Chanree's earlier payment of $24,657.52 to the Funds on behalf of Palmer. However, because that amount has no relevance to the central issues in this matter, the Arbitrator did not commit an error that requires correction.

2010 Award rendered in the first arbitration, the Funds applied to obtain a writ of execution which they subsequently served on the Board. The Board honored the writ and withheld a certain amount of money due Chanree for work performed on the Chesterfield project. Thereafter, the Funds moved before this Court for a turnover order, which was denied by this Court's Letter Order dated September 19, 2011. In that Order, I found that because the amount of Chanree's liability to Palmer had not been determined, it was appropriate to restrain the Funds from further collection efforts against Chanree. However, I did not address whether the writ served upon the Board was legally sound.

Rule 69 of the Federal Rules of Civil Procedure governs proceedings in aid of execution and directs that such proceedings shall take place in accordance with the state in which the District Court sits, except that any federal statute governs to the extent that it is applicable. Savitsky v. Mazzella, 93 Fed. Appx. 439, 441 (3d Cir. 2004). In particular, Rule 69(a)(1) provides the following:

> Money Judgment; Applicable Procedure. A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1). Indeed, only a money judgment can be enforced by a writ of execution under this Rule. See Tennenbaum Capital Partners, LLC v. Kennedy, No. 09-194, 2012 U.S. Dist. LEXIS 30090, at *7 (E.D. Pa. Feb. 10, 2012). Similarly, under New Jersey law, procedurally, only a final monetary judgment can be the subject of a writ of execution. See Halpern v. Tannenbaum, 207 N.J. Super. 314, 317 (Law Div. 1985); see also Berger v. Paterson Veterans Taxi Serv., 244 N.J. Super. 200, 206 (App. Div. 1990).

Here, I explained in my September 2011 Letter Order that the Funds had to first conduct an audit in order to determine the amount, if any, of Chanree's liability to Palmer as of May 2010. Because an audit was not performed, Chanree's liability to Palmer had not been established prior to the Funds' service of the writ of execution upon the Board. As such, the Funds had no legal basis to execute the writ as there had not been a final monetary judgment. While the Funds is correct in arguing that New Jersey law permits the creditor to garnish money owed when a judgment is sufficiently definite to be executable, see N.J.S.A. 2A:17-63, here, the only amount certain was Palmer's delinquent contributions to the Funds, as that issue was the subject of the first arbitration. On the other hand, Chanree's liability to Palmer had not been ascertained by an audit, and therefore, that amount – at the time the writ was served – was not sufficiently definite to be executable. Accordingly, based on these reasons, the Court vacates the May 13, 2011 writ of execution served upon the Board. Indeed, the Funds may, based on the Court's confirmation in the instant matter, apply for another writ. Lastly, since the writ of execution is vacated, necessarily, the Funds' request for a turnover order based on that writ is denied.

With respect to Sloan's request, Sloan moves to intervene in this matter in order to quash the May 13, 2011 Writ. Sloan was a subcontractor hired by Chanree to perform work on the Chesterfield Project. Sloan alleges that as of July 13, 2011, Chanree has substantially completed all the work for that project, and as such, Chanree is required to pay Sloan in the amount of $110,823.65. However, because the Board is currently holding final payment to Chanree pursuant to the May 13, 2011 Writ, Chanree has refused, based on a pay-if-paid clause in the

subcontract, to pay Sloan until Chanree receives final payment from the Board. Since the Court has vacated the writ in question, Sloan's request for intervention is moot.[9]

Dated: July 25, 2013

                                                  s / Freda L. Wolfson
                                                FREDA L. WOLFSON, U.S.D.J

---

[9] While Petitioners oppose Sloan's motion for intervention, Petitioners are willing to reduce their award in order to remove any threat to Sloan's interest, if any, in the monies that the Board is currently holding pursuant to the writ. Because Sloan's motion is moot, I need not address this issue.